**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Craig Silman,<br><br>               Plaintiff,<br><br>v.<br><br>Swift Transportation Incorporated, et al.,<br><br>               Defendants. | No. CV-23-02624-PHX-DWL<br><br>**ORDER** |

## INTRODUCTION

In this action, *pro se* Plaintiff Craig Silman alleges that he was employed by Defendant Swift Transportation Company of Arizona LLC ("Swift") as a truck driver but was misclassified as an independent contractor per the terms of a contract entitled "Independent Contractor Operating Agreement" ("ICOA" or "the Agreement"), resulting in violations of his rights under the Fair Labor Standards Act ("FLSA"). (Doc. 14.) Plaintiff also asserts additional federal and state-law claims. (*Id.*)

Swift has filed a motion to compel arbitration. (Doc. 25.) Swift highlights a provision in the ICOA stating that the Arizona Revised Uniform Arbitration Act ("AZ-RUAA") applies to the ICOA "without limitation" and that:

> all disputes or other matters arising under this Agreement including any claims or disputes arising under or relating to any state or federal laws county, state or federal wage and hour law; compensation; breaks and rest periods; training; termination; discrimination; harassment; 49 C.F.R. Part 376; the Civil Rights Act of 1964; the Fair Labor Standards Act; . . . ; any state statutes, if any, addressing the same or similar subject matters; and all other similar federal and state statutory and common law claims shall be subject to arbitration, under the Act, without regard to any contrary law.

(Doc. 25 at 2.)[1]

Swift "concedes that if Plaintiff was an employee, he would not be subject to arbitration under [the AZ-RUAA]" but "disagrees that Plaintiff was an employee and affirmatively asserts that he was an independent contractor who can be compelled to arbitration under the Act." (*Id.* at 4.) Swift argues that it satisfies the criteria under A.R.S. § 23-1601(B), which creates a "rebuttable presumption" that a worker who has signed a declaration of independent business status is an independent contractor (*id.* at 4-7), and further argues that the "economic realities" test does not support a determination that Plaintiff was Swift's employee (*id.* at 7-9). Swift's motion is supported by a declaration from Brett Stewart, Vice President of Swift's Owner Operator Division (Doc. 25-1), and Swift relies on that declaration in support of its arguments regarding the "economic realities" test.

In response, Plaintiff argues that the terms of the ICOA are not determinative and disputes the facts in the Stewart declaration as "not the reality of the situation." (Doc. 28 at 3-5.) Plaintiff argues that the "the facts of the nature of the relationship" should govern whether he was Swift's employee, that the "economic reality" test is not the appropriate test, and that the Court should use the test appliable to Arizona workers' compensation claims to determine his employment status. (*Id.* at 5-6.) Plaintiff has submitted several of his own declarations. (Doc. 5; Doc. 28 at 7-8; Doc. 30.)

In reply, Swift argues that "Plaintiff cannot rebut the presumption that he was an independent contractor under Arizona law" (Doc. 35 at 3-4) and that Plaintiff was not an employee under the FLSA (*id.* at 4-7).

…

---

[1] Swift argues in its motion that the arbitration provision is not "substantively or procedurally unconscionable." (*Id.* at 3-4.) Plaintiff addresses this argument as follows: "Plaintiff believed the [ICOA] was legitimate and signed the contract in good faith. There was nothing in the ICOA that made Plaintiff believe the ICOA was a sham. However, the ICOA is not a true independent contractor agreement and Plaintiff was fraudulently induced into signing it. As such the ICOA is not enforceable." (Doc. 28 at 2.) In reply, Swift argues that Plaintiff's unconscionability argument is undeveloped and inconsistent. (Doc. 35 at 1-2.) The Court agrees. Thus, unconscionability is not the focus of this order.

**DISCUSSION**

It is worth beginning by noting what is *not* happening here. The arbitration clause in the ICOA does not invoke the Federal Arbitration Act ("FAA") and the motion to compel does not ask this Court to compel arbitration pursuant to the FAA. There is a good reason for this. Section 1 of the FAA provides "the contours of judicial 'authority' or 'power,'" and "[w]hen it is applicable, it prohibits a court from staying a litigation and ordering the parties to arbitration." *Romero v. Watkins & Shepard Trucking, Inc.*, 9 F.4th 1097, 1100-01 (9th Cir. 2021). Section 1 exempts "contracts of employment" for interstate transportation workers[2]—such as truck drivers—from the FAA, and the Supreme Court recently clarified that the term "contracts of employment" is broad enough to encompass "any contract for the performance of *work* by *workers*," without distinguishing between employees and independent contractors. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 115-16 (2019). Thus, for purposes of § 1, "the term 'contracts of employment' [does not] refer only to contracts between employers and employees . . . [but] also reach[es] contracts with independent contractors." *Id.* at 108. As such, if Swift's motion were brought pursuant to the FAA, it would easily be denied.

Instead, Swift seeks to compel arbitration pursuant to the AZ-RUAA. Like the FAA, the AZ-RUAA also contains an employment exemption, which is generally more sweeping in scope because it is not limited to transportation workers: "The FAA is applicable to employment contracts involving interstate commerce, with the exception of those involving transportation workers. Conversely, the AZ-RUAA does not apply to employment contracts." *Shield Sec. & Patrol LLC v. Lionheart Sec. & Consulting LLC*, 2017 WL 4897460, *2 (Ariz. Ct. App. 2017) (cleaned up). However, the employment exemption in the AZ-RUAA is worded differently than the one in the FAA. Rather than exempting "contracts of employment," as the FAA does, the AZ-RUAA exempts "an agreement to arbitrate any existing or subsequent controversy . . . [b]etween an employer

---

[2] *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) ("Section 1 exempts from the FAA only contracts of employment of transportation workers.").

and employee or their respective representatives." A.R.S. § 12-3003(B)(1). In *Oliveira*, the Supreme Court concluded that the term "contracts of employment" in the FAA does not refer "only to contracts that reflect an employer-employee relationship" in part because although the words "employee" and "employment" "share a common root and an intertwined history," they "developed at different times and in at least some different ways." 586 U.S. at 113-18. Thus, the holding of *Oliveira* does not extend to the AZ-RUAA, which uses the words "employer and employee" rather than "employment." As such, an interstate transportation worker is exempt from the FAA regardless of whether he is an employee or an independent contractor, but he is exempt from the AZ-RUAA only if he is an employee.[3]

I. <u>"Employee" And "Employer" Under The AZ-RUAA</u>

    A. **The Parties' Arguments**

The parties disagree about how the Court should determine whether Plaintiff is Swift's "employee" for purposes of determining whether the AZ-RUAA exemption applies. The parties appear to agree that the interpretation of the word "employee" should reflect the nature of the claims at issue in the action. However, in an action like this one, where there are multiple causes of action that trigger different tests for "employee" status, the question of which test(s) to use becomes more complicated. Swift argues that the Court should use the "economic realities" test, which is used to determine whether a person is an "employee" in FLSA actions as well as in actions arising under Arizona's wage, benefit, and hour laws. (Doc. 25 at 7.) Swift also argues that A.R.S. § 23-1601(B), the Arizona statute establishing a rebuttable presumption of independent contractor status if certain criteria are met, is applicable. (*Id.* at 4-7.) Plaintiff argues that he is an employee under the test applicable to workers' compensation claims—"Plaintiff is an employee under Arizona law under the 'method of control' test"—and that A.R.S. § 23-1601(B) is not determinative. (Doc. 28 at 2.) In reply, Swift argues that "under both Arizona law and the [FLSA], Plaintiff cannot establish that was an employee versus independent contractor."

---

[3]   Neither party has argued that the FAA preempts the AZ-RUAA in this regard.

- 4 -

(Doc. 35 at 1.) Swift also asserts that "[t]his is not a worker's compensation case," even though it acknowledges that one of the claims in the first amended complaint ("FAC") is for violation of Arizona's workers' compensation laws, because "it's not evident that [Plaintiff] has a cognizable private right of action against Swift under that statute" and "alleged wage and hour violations appear to be the core of Plaintiff's first amended complaint." (*Id.* at 3.) Swift concedes that A.R.S. § 23-1601(B) applies only "[t]o the extent" that a claim "fall[s] under state law" and argues that it "is not clear" from the FAC whether Plaintiff's wage and hour claims arise from state law. (*Id.*)

As this discussion shows, before the Court can determine the applicability of the AZ-RUAA's exemption for "an agreement to arbitrate any existing or subsequent controversy . . . [b]etween an employer and employee or their respective representatives," A.R.S. § 12-3003, it must first determine what legal test(s) for establishing "employee" status should be used.

B. **Legal Standard**

The AZ-RUAA does not define the terms "employee" and "employer." Under Arizona's rules of statutory construction, "[w]ords and phrases shall be construed according to the common and approved use of the language. Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning." A.R.S. § 1-213. Where courts "consistently" use a term in a certain way, inclusion of that that term manifests the legislature's "intent to follow the common and approved meaning of that word as defined and relied upon by the courts." *United Dairymen of Arizona v. Rawlings*, 177 P.3d 334, 338-39 (Ariz. Ct. App. 2008). *See also Wallace v. Smith in & for Cnty. of Maricopa*, 532 P.3d 752, 755 (Ariz. 2023) ("[A] technical meaning . . . should not be lightly discarded.").

C. **Construction**

The words "employee" and "employer" are technical words that have acquired a particular meaning in the law and are consistently used in a certain way in the context of the FLSA. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979)

("employees" in the FLSA context are "those who *as a matter of economic reality* are dependent upon the business to which they render service"); *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961) ("[T]he 'economic reality' rather than 'technical concepts' is . . . the test of employment."). Arizona attributes the same meaning to these words for its own wage and hour laws. A.R.S. § 23-362(D) ("[W]hether a person is an independent contractor or an employee shall be determined according to the standards of the federal fair labor standards act, but the burden of proof shall be upon the party for whom the work is performed to show independent contractor status by clear and convincing evidence."); *id.* § 23-371(E) (importing definition from Article 8, "Minimum Wage and Employee Benefits," into Article 8.1, "Earned Paid Sick Time").[4]

However, these same words—"employee" and "employer"—have acquired a different meaning in other contexts. *See, e.g.*, *Ariz. Prop. & Cas. Ins. Guar. Fund v. Dailey*, 751 P.2d 573, 574-75 (Ariz. App. 1987) (construing the word "employee" in an insurance contract[5] "from the viewpoint of one not trained in the law or the insurance business" and concluding that "the ordinary meaning of the word as it is understood by persons generally" is "an individual who works for the assured for compensation and is subject to his direction and control"); *Gregory G. McGill, P.C. v. Ball*, 519 P.3d 729, 734 (Ariz. Ct. App. 2022) (importing "direction and control" test to determine that an attorney was not a client's "employee," and thus the client could not invoke the AZ-RUAA's "employee" exemption to avoid arbitrating a fee dispute arising from a retainer agreement that contained an arbitration clause). One of those different contexts is Arizona's workers' compensation scheme. *Henderson-Jones v. Indus. Comm'n of Arizona*, 310 P.3d 976, 980 (Ariz. Ct. App. 2013) ("When determining whether a claimant is an employee or an independent contractor

---

[4] Swift cites Ariz. Admin. Code R20-5-1205(A) ("Determination of an employment relationship under the Act, which includes whether an individual is an independent contractor, shall be based upon the economic realities of the relationship."), but that rule applies only to "actions and proceedings *before the Industrial Commission of Arizona* arising under A.R.S. Title 23, Articles 8 and 8.1." Ariz. Admin. Code R20-5-1201 (emphasis added).

[5] A separate provision of the AZ-RUAA exempts agreements to arbitrate "[c]ontained in a contract of insurance." A.R.S. § 12-3003(B)(2).

- 6 -

for purposes of workers' compensation benefits . . . the primary focus is usually on the employer's right to control the worker."); *Anton v. Indus. Comm'n of Arizona*, 688 P.2d 192, 200 (Ariz. Ct. App. 1984) ("The facts before us clearly show a business entrepreneur who, while taking great pains to disclaim the right to control his employees except as to the end result of their labors, simultaneously 'contracted out the very heart' of his own enterprise. . . . We hold that under the facts of this case such hirelings, whose work is the 'very heart' of the entrepreneur's business, whose efforts are expended in the usual and regular course of the owner's business, and whose job is an ongoing basic employment activity of the business owner as opposed to an incidental part of the owner's normal operation, are not independent contractors for the purposes of workers' compensation law.").[6]

Swift argues that the Court should use the definition applicable to FLSA claims because Plaintiff's FLSA claim is "the core" of the FAC. (Doc. 35 at 3.) Although it is difficult to turn a blind eye to the apparent weaknesses in Plaintiff's other claims, the Court is not authorized to dismiss any claims before making the threshold determination of whether to grant the motion to compel arbitration. *See, e.g.*, A.R.S. § 12-3007(D) ("The court may not refuse to order arbitration because the claim subject to arbitration lacks merit

---

[6] There is an irony to the parties' positions. "The FLSA's definition of employee has been called the broadest definition that has ever been included in any one act." *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997) (cleaned up). "The definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983). *See also Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947) ("[I]n determining who are 'employees' under the [FLSA], common law [employee] categories or employer-employee classifications under other statutes are not of controlling significance. [The FLSA] contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category.") (citation omitted); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the "striking breadth" of the FLSA's definition of "employ" "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles"). Because the FLSA test for "employee" and "employer" status is broader than the test applicable when determining "employee" and "employer" status under Arizona workers' compensation laws or "general civil" laws, Swift is advocating for a test more favorable to Plaintiff's position and Plaintiff is advocating for a test more favorable to Swift's position.

or grounds for the claim have not been established."). Thus, the Court operates under the assumption that all of Plaintiff's claims are relevant when determining what the terms "employee" and "employer" mean for purposes of determining whether the AZ-RUAA exemption applies to this action.

A.R.S. § 12-3003(B)(1) provides that the AZ-RUAA "shall not apply to an agreement to arbitrate any existing or subsequent controversy . . . [b]etween an employer and employee or their respective representatives." The statute exempts "any" controversy between an employer and employee, and the legislature can be presumed to have known that in employment law, the nature of the controversy determines the legal test for determining employee status. *Cf. United States v. Hansen*, 599 U.S. 762, 774 (2023) (when a legislative body "borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word"). There is no language in A.R.S. § 12-3003(B)(1) to suggest the construction of the word "employee" should always be the same, regardless of the nature of the underlying controversy, and both sides agree that the construction should be claim-dependent. Given this agreement, the Court will follow the parties' proposed approach. *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020).

To that end, Arizona law contemplates that certain claims may be subject to arbitration while others are not, in which case the claims subject to arbitration may be severed. A.R.S. § 12-3007(G). Thus, if Plaintiff were hypothetically determined to be an "employee" for the purposes of some claims and an independent contractor for the purposes of others, his claims could be severed and he could be ordered to arbitrate only the latter.

II.     Application

The next question is whether Plaintiff was Swift's "employee" for purposes of each claim in the FAC. This is a question that cannot be delegated to the arbitrator. *In re Van Dusen*, 654 F.3d 838, 842-44 & n.3 (9th Cir. 2011) (concluding that "the district court must make an antecedent determination that a contract is arbitrable under Section 1 of the FAA before ordering arbitration pursuant to Section 4" and clarifying in a footnote that

"[g]iven the similarities between the relevant sections of the FAA and [AZ-RUAA], we hold that our analysis of the issues raised under the former statute sufficiently addresses the same issues as raised under the latter"). *See also Van Dusen v. Swift Transp. Co., Inc.*, 544 F. App'x 724, 724 (9th Cir. 2013) (reiterating that "a district court must determine whether an agreement for arbitration is exempt from arbitration under § 1 of the [FAA] as a threshold matter").

### A. Count One: FLSA

In Count One of the FAC, Plaintiff asserts a claim under the FLSA. (Doc. 14 at 1.) As noted, the "economic realities" test governs whether Plaintiff is an "employee" for the purposes of this claim. *Real,* 603 F.2d at 755 ("The Agreement labels the appellants as 'independent contractors' and employs language, purporting to describe the appellants' relationship to Driscoll and DSA, that parrots language in cases distinguishing independent contractors from employees. That contractual language, however, is not conclusive in the circumstances presented here. Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA.").[7] As the Ninth Circuit has explained:

> The courts have identified a number of factors which may be useful in distinguishing employees from independent contractors for purposes of social legislation such as the FLSA. Some of those factors are:
>
> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
>
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanence of the working relationship; and

---

[7] Swift repeatedly cites the "rebuttable presumption of an independent contractor relationship" pursuant to A.R.S. § 23-1601(B), but that presumption is applicable only for purposes of Title 23 of the Arizona Revised Statutes. It has no inherent applicability to the AZ-RUAA (which appears in Title 12, not Title 23) and no applicability to a determination of employee status for purposes of an FLSA claim.

> 6) whether the service rendered is an integral part of the alleged employer's business.
>
> The presence of any individual factor is not dispositive of whether an employee/employer relationship exists. Such a determination depends "upon the circumstances of the whole activity."

*Id.* at 754.

Swift's motion to compel devotes only two pages to discussing the "economic realities" test. (Doc. 25 at 7-9.) Although Swift cites Stewart's declaration to set forth certain facts intended to establish that Plaintiff was not an employee—for example, that drivers can "perform services for other companies" (Doc. 25-1 ¶ 6), "have the right to accept or decline Swift's requests for services" (*id.* ¶ 7), "are authorized to determine their days worked and time periods of work" (*id.* ¶ 11), and "are responsible for providing and maintaining their own tools and equipment," including their own trucks (*id.* ¶13)—Plaintiff's declarations set forth competing facts, including that Swift effectively provided his truck (Doc. 5 ¶¶ 5-7), that Swift "took possession of [his] truck," leaving him stranded (*id.* ¶ 10), that Plaintiff's involvement in accepting a new load was limited to indicating he was "ready to accept a load," at which point, "[o]nce a load was found," he was told the "location, time of pick up, destination, and time of delivery" of the load (Doc. 28 at 7 ¶ 4), that although he was told he "could refuse a load," he "had no idea what the ramification of rejecting a load was since [he] had no visibility into the availability of loads" (*id.* at 8 ¶¶ 5-6), and that rejecting a load could result in not receiving "an additional load offer" for days (*id.* ¶ 7).

Given this backdrop, genuine disputes exist as to the extent to which Swift had the right to control Plaintiff's work and whether the required equipment or materials were provided by Swift or Plaintiff. Thus, the Court cannot, on this record, determine whether Plaintiff was Swift's "employee" for purposes of the FLSA. *Cf. Narayan v. EGL, Inc.*, 616 F.3d 895, 901 (9th Cir. 2010) ("Judge Easterbrook has keenly observed in a case under the [FLSA] that if we are to have multiple factors, we should also have a trial. A fact-bound approach calling for the balancing of incommensurables, an approach in which no ascertainable legal rule determines a unique outcome, is one in which the trier of fact plays

the principal part. That there is a legal overlay to the factual question does not affect the role of the trier of fact.") (cleaned up); *Pulido v. Desert Platinum Properties, LLC*, 2024 WL 3936386, *5 (D. Ariz. 2024) (denying putative employer's motion for summary judgment on whether plaintiff was an independent contractor because "although much of the evidence is undisputed, the Court concludes there are still enough disputed facts, as well as disputed inferences arising from undisputed facts, to render summary judgment inappropriate"); *Gillard v. Good Earth Power AZ LLC*, 2019 WL 1280946, *7 (D. Ariz. 2019) ("The Court finds that material disputes of fact and inferences to be drawn from the facts exist concerning the [*Driscoll*] employee/contractor factors that preclude summary judgment.").

### B. Count Two: 49 C.F.R. § 376.12(A)(1)

In Count Two of the FAC, Plaintiff asserts a claim arising under 49 C.F.R. § 376.12(A)(1).

The Court notes, as an initial matter, that the cited subsection does not exist, although 49 C.F.R. § 376.12 generally governs vehicle lease requirements. At any rate, the FAC seems to assert that Count Two is a claim against Swift for "unlawfully taking possession of truck 242056." (Doc. 14 at 2.) Swift does not address Count Two in its motion to compel arbitration, due to its mistaken belief that the Court should limit its arbitrability analysis to the FLSA claim, and Plaintiff does not address Count Two in his response.

This backdrop makes for an unsatisfying record in evaluating whether Plaintiff should be compelled to arbitrate Count Two. Neither side provides any reasoned argument as to why Plaintiff should or should not qualify as an "employee" for purposes of this claim. Under the circumstances, the most efficient approach is to delay the resolution of this issue until the other claims are addressed.

### C. Count Three: A.R.S. § 23-908

In Count Three of the FAC, Plaintiff asserts a claim arising under A.R.S § 23-908, which is Arizona's workers' compensation statute. (Doc. 14 at 1.)

As noted, the test for determining whether an individual is an "employee" for purposes of Arizona's workers' compensation statute is different than the test for determining whether an individual is an "employee" under the FLSA: "When determining whether a claimant is an employee or an independent contractor for purposes of workers' compensation benefits . . . the primary focus is usually on the employer's right to control the worker." *Henderson-Jones*, 310 P.3d at 980. Additionally, as to this claim, a rebuttable presumption of independent-contractor status arises due to Plaintiff's execution of a declaration of independent business status. A.R.S. § 23-1601(B).

Despite these differences, the Court concludes—as it did in relation to Count One—that because there are genuine factual disputes bearing on the extent to which Swift had the right to control Plaintiff's work, the Court cannot, on this record, determine whether Plaintiff is an "employee" for purposes of the Count Three.

    D.    **Count Four: A.R.S. § 23-908**

In Count Four of the FAC, Plaintiff asserts a claim entitled "General Civil." (Doc. 14 at 1.) In the body of the complaint, Plaintiff appears to indicate that Count Four is a claim for the value of the "several thousands of dollars of personal items" that were inside Plaintiff's truck when it was allegedly seized by Swift, as well as for the value of the truck itself. (*Id.* at 3.)

The arbitrability analysis as to Count Four mirrors the analysis as to Count Two. Again, neither side provides any reasoned argument as to why Plaintiff should or should not qualify as an "employee" for purposes of this claim and the most efficient approach is to delay its resolution until the other claims are addressed.

III.    <u>Next Steps</u>

Unfortunately, the parties have not briefed how they believe the Court should proceed upon concluding that the applicability of the AZ-RUAA's exemption—which is "an antecedent determination" the Court must make before deciding arbitrability, *In re Van Dusen*, 654 F.3d at 842-44 & n.3, but also overlaps with the merits of at least some of

Plaintiff's claims—turns on unresolved factual disputes.[8] Nor does it appear to the Court, based on its independent research, that there is a clear answer to this question. *Cf. In re: Swift Transp. Co. Inc.*, 830 F.3d 913, 915-17 (9th Cir. 2016) (denying mandamus petition where the district court "issued a case management order that included a discovery schedule, motion deadlines, and set a potential trial date" for purposes of deciding whether the FAA's § 1 exemption applied but noting that "in neither *Van Dusen I* nor *Van Dusen II* did we instruct the district court to make the § 1 determination in a certain way" and that "there do not appear to be any decisions from our sister circuits on the question of whether the FAA compels a certain procedural choice in a district court's § 1 determination"); *id.* at 920 (Ikuta, J., dissenting) ("[B]y requiring the parties to litigate the underlying substance of Van Dusen's claim—whether the economic realities of Van Dusen's work for Swift made Van Dusen an employee for purposes of the FLSA—the district court risks depriving Swift of the benefits of its contract."). Although it might be possible for the Court to plow ahead and attempt to resolve this complicated issue on its own, the better approach is to solicit the parties' input before proceeding further. *Sineneng-Smith*, 590 U.S. at 375-76.[9] In the meantime, Swift's motion to compel arbitration will remain pending. *Cf. Hansen v. LMB Mortgage Servs.*, Inc., 1 F.4th 667, 672 (9th Cir. 2021) (under the FAA, a district court must "hold any motion to compel arbitration in abeyance until the factual issues have been resolved").

---

[8] If this case were being litigated in Arizona state court, the Court would be required to follow the procedural requirements of the AZ-RUAA, which include that when a motion to compel arbitration is opposed, "the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." A.R.S. § 12-3007(A)(2). "To proceed 'summarily,' the trial court must first determine whether material issues of fact are disputed and, if so, conduct an expedited evidentiary hearing to resolve those disputes." *Turley v. Beus*, 2017 WL 410976, *9 (Ariz. Ct. App. 2017). *See generally Duncan v. Public Storage, Inc.*, 507 P.3d 509, 514 (Ariz. Ct. App. 2022) ("In the superior court, a party seeking to compel arbitration must demonstrate the existence of an arbitration agreement. The superior court next determines whether material issues of fact are disputed, and, if such factual disputes exist, then conducts an expedited discovery hearing to resolve the dispute.") (cleaned up).

[9] The Court appreciates that Plaintiff is a *pro se* litigant and that the legal issue on which his input is being solicited is somewhat obscure. Even so, the Court's experience is that disputed issues are usually best resolved through the adversarial process. Also, "[a] district court lacks the power to act as a party's lawyer, even for *pro se* litigants." *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

Accordingly,

**IT IS ORDERED** that Swift's motion to compel (Doc. 25) will remain pending.

**IT IS FURTHER ORDERED** that the parties must meet and confer and make a sincere attempt to reach an agreement as to next steps for resolving the dispute over arbitrability.

**IT IS FURTHER ORDERED** that by October 22, 2024, the parties must file either (1) a joint notice setting forth their agreed-to procedure for resolving the dispute over arbitrability; or (2) separate notices setting forth each side's proposed procedure for resolving the dispute over arbitrability, which may also include legal citations and argument for why that procedure should be selected.

Dated this 8th day of October, 2024.

Dominic W. Lanza
United States District Judge